DECISION
The Appellants, Paul and Marguerite Lischio ("Appellants") appeal the April 11, 2000 Decision of the North Kingstown Zoning Board of Review denying their application for a use variance on Assessor's Plat 102, Lot 129, and a dimensional variance on Assessor's Plat 101, Lot 20. Jurisdiction is pursuant to G. L.1956 § 45-24-69.
 Facts/Travel of the Case
The Appellants became the owners of a parcel of land measuring in excess of 47 acres in 1963. In 1975, they requested and received from the Town Council the designation of "general business" for the parcel's zoning district. In 1985, the State took part of the Appellant's property by eminent domain in order to construct Route 4. For all practical purposes, this taking resulted in the division of Appellant's property into three parcels: one parcel to the east, approximately 17 acres, which the Appellants later developed; an essentially landlocked parcel to the west of approximately 19 acres (designated Assessor's Plat 101, "Lot 20," hereinafter "Lot 20"); and another parcel measuring in excess of 13 acres, which was taken for Route 4. In 1987, "Lot 20" decreased in size to approximately 16 acres when the DEM condemned 2.33 acres of the parcel as a wetlands buffer.
One year later, in 1988, the North Kingstown Planning Commission approved the development of a parcel of land to the west of Appellant's "Lot 20" as a high density residential subdivision known as "Mountain Laurel Estates" ("MLE"). This subdivision had 81 lots, each consisting of a 1/2 acre with some open space. A street within the new subdivision, "Highbush Terrace," extended almost to the boundary of Appellant's "Lot 20." When the final plat for MLE was approved by the Planning Board and recorded on September 26, 1998, a very small lot (221 square feet) had been created on the easterly terminus of Highbush Terrace which was designated as Assessor's Plat 102, "Lot 129" ("Lot 129"). This lot had an express plat notation that it "be for roadway purposes only." In 1992, the developer of MLE conveyed "Lot 129" to Appellants by warranty deed, recorded January 10, 1992.
The North Kingstown Comprehensive Plan was adopted by the Town of North Kingstown ("Town") in 1992 and approved by the State in 1995. The land use plan map contained in the comprehensive plan designates the location of "Lots 20 and 129" for "low density residential" development. The area in which both of these lots are located has been in the Town's Groundwater Overlay District since 1974. On October 24, 1998, the Town's zoning ordinance was amended to limit the density of residential development in the Overlay District to one dwelling unit per two acres. Hence, the "low density" classification of the comprehensive plan's land use map was effectuated. In 1997, the North Kingstown Planning Commission and Planning Department were engaged in preparing a comprehensive amendment to the Town's Zoning Ordinance so as to conform the Zoning Ordinance with the Town's Comprehensive Plan, as required by § 45-22.2-5(A)(4). In the late Spring of 1997, the draft of the proposed amendment would have rezoned both of the Appellants' lots to "rural residential" with 80,000 square foot lots. Prior to the amendment's adoption, the Appellants filed a petition with the Town of North Kingstown Zoning Board of Review in November of 1997 requesting permission to develop "Lot 20" as a motel. At that time, the Appellants were advised by the Planning Staff that "Lot 129," which was zoned "village residential," could not be used as an access to "Lot 20," which was zoned "general business." At the Planning Commission hearings in November of 1997, the Chairman of the Commission and its members recognized that a motel use on "Lot 20" was a permitted use but encouraged Appellants to determine what possible residential uses might be acceptable. The Appellants allege that their efforts to develop the parcel in a residential capacity over a period of approximately three years were not received in a neutral manner by the Board. They also object to the Overlay District density limitation of one dwelling unit per two acres placed on their lots. The Appellants contrast their lots with the neighboring subdivision, MLE, which has each unit on a 1/2 acre. The Town in its Memorandum states that as a result of an ongoing dialogue with the Appellants and the Town with respect to the lots, both lots were withdrawn from the comprehensive zoning amendment which was ultimately adopted by the Town Council on May 11, 1998. Thus "Lot 20" remained a general business zoned district, and the zoning ordinance continued to lack conformity with the comprehensive plan with regard to the lot's zoning designation.
Subsequently, the Appellants filed an application requesting a general business variance for "Lot 129" and a dimensional variance from the frontage requirements on "Lot 20," in order to conduct a self storage business on "Lot 20." The initial application submitted by the Appellants was refused by the Director of Planning for the Town. By writ of mandamus, the application was accepted by the Town. The Appellants' application proposed a self storage facility, a "permitted" use of the "general business" zoned "Lot 20," and requested that the frontage requirement on "Lot 20" be decreased from 200 feet to 51.23 feet. With regard to "Lot 129," zoned village residential, Appellants requested a use variance in order for the village residential lot to be used as highway access from the end of Highbush Terrace to Appellants' "Lot 20," which was zoned general business. They claim that this use would be in accordance with the restriction on use by the Planning Commission at the time of the creation of the lot, that "Lot 129" be used for roadway purposes only. In its April 11, 2000 decision, the Zoning Board of Review denied both the variance requests in Appellants' application. The Appellants then filed this timely appeal.
 Testimony of the Witnesses
At the advertised hearings before the Zoning Board of Review on February 8th and 29th of 2000, testimony was taken from both lay and expert witnesses. The Appellants produced four expert witnessess on their behalf: Mr. Ruggiero, Mr. Caito, Mr. Sloan, and Mr. Salem. Mr. Peter Ruggiero, a lawyer and former North Kingstown Town Planner, testified that there was absolutely no beneficial use to which "Lot 129" could be put and absolutely no access or frontage for "Lot 20." It was also his opinion that the criteria set forth in the North Kingstown Ordinance pertaining to use variances and dimensional variances had been met by the Appellants; thus, he stated, their application should be granted. On cross examination, Mr. Ruggiero admitted that typically, as a town planner, one would want a barrier between a general business district and a residential district. His opinion relied on the expert opinion of the traffic engineers that there would be no traffic safety or congestion issues involved with the proposed commercial use being accessed through a residential neighborhood. Mr. John Caito, a licensed engineer who prepared and submitted the Appellants' plans for property development, testified that the limitation in size of "Lot 129," under the Ordinance, prevented the property from being used for any purpose. He further testified that "Lot 20" had absolutely no access. He stated that the Appellants' application met the Ordinance's criteria for the variances. Expert witness, Mr. James Sloan, a realtor and appraiser, testified that neither lot could be used for any purpose due to the failure of "Lot 129" to meet the dimensional requirements and the lack of access to "Lot 20." Mr. James Salem, a transportation engineer, testified that a very low generation of traffic would result from the permitted use of the property as a mini-storage facility. The amount, he stated, would be less than what a residential area would generate. Specifically, he testified that there will be approximately 88 vehicles traveling to the site daily, 176 trips overall. He stated that truck trips will account for 2 to 15% of the weekday traffic at the site. At the high end, this would equate to 12 trucks daily, 24 trips overall. He testified that there would be no resulting safety hazards. As did Mr. Ruggiero and Mr. Sloan, Mr. Salem testified that the approval of Appellants' application would not alter the general character of the area.
Several residents of the neighboring MLE subdivision testified in opposition to the proposed variances: Mr. Michael Heaney, Ms. Susan Brandt, Mr. Kevin Foster, Mr. Edris Crockford, Mr. Robert Beaty, Mr. Patrick McHugh, Mr. Phillip Goodwin, and Mr. Michael Vanberlo. Ms. Brandt testified that she conducted an informal survey of how many children resided in the subdivision. She testified that 111 children lived within the subdivision and that 12 lived on Highbush Terrace. She testified that children often play in the streets and that there are no sidewalks. In the winter, snow mounds necessitate that the residents walk in the street. Mr. Foster also testified that he was concerned with the residents' safety, in that children often walked to the town playground adjacent to the subdivision. Mr. Heaney testified that the proposed use is in total contrast to that of the neighborhood and submitted a videotape he recorded in order to display the area, which was viewed by the Board at the hearing. Residents testified that they would not have purchased their homes in MLE had they known about the Appellants' lot. In addition, residents cited articles pertaining to crimes and fires occurring at such facilities and expressed concern that there was only one access to the facility (through the streets of MLE) for police or fire vehicles. A recent purchaser of an MLE home who had retired after a career in the FBI, Mr. Goodwin, stated that he would prefer a fuel storage depot located on "Lot 20" as opposed to a self storage facility because self storage facilities, in his opinion, store unknown drugs and chemicals.
In addition, the Town produced two experts: Mr. Francis Perry, a registered professional engineer in Rhode Island with a Master's Degree in civil engineering; and Mr. William McGovern, a real estate appraiser and consultant for thirty years, who taught educational courses with respect to real estate appraisal. Mr. Perry testified that his impression was that the MLE roadways, which were only frequently used by residents, were upscale and strictly residential. The traffic, therefore, mainly consisted of those who had a vested interest in the community. The addition of the self storage facility would introduce a totally different kind of traffic consisting of 15% trucks. In his opinion, the mixing of the two types of traffic would be incompatible. He agreed with the Appellants as to the numbers with regard to the increased level of traffic but stated that the Appellants' experts did not address the current usage of the streets and the impact of adding commercial traffic. The impact would pose, according to his testimony, a safety concern for the children within the neighboring community of MLE. He concluded that granting the variances would result in an inappropriate mix of usages of the streets. Mr. McGovern testified that he prepared his report under the Uniform Standards of Professional Appraisal Practice and that he was therefore not testifying as an advocate. "Lot 20," he stated, is sandwiched between two residential zones. To the west, the zoned district is "rural residential"; to the east, it is "village residential." He determined the the value of the property by figuring the "highest and best use." He stated that the highest and best use for that area was "low density residential," as set forth in the comprehensive plan of the Town of North Kingstown. (2/29/00 Transcript at 52). The proposed use for "Lot 20," he testified, was contrary to the zoning ordinance and comprehensive plan and "would clearly alter and upset the character of this residential neighborhood." (2/29/00 Transcript at 53) He stated also that if the variance was granted, it would cause "irreparable harm, immeasurable dimunition in value of the residences that exist in the locus of the subject property." (2/29/00 Transcript at 55-56) The damage in value to the neighboring homes, although characterized as "minor," would nonetheless cause a 15-20% loss in value. (2/29/00 Transcript at 57) His research of statistical information on mini warehouses in New England revealed that 21% of its volume was non-residential, and that there was a 19% incidence of theft and a 12 1/2 % incidence of graffitti. He concluded that the granting of the variance would not serve the public welfare or health, safety, or morals of the community. On cross-examination, Mr. McGovern testified that if he were the Appellant, he would use the property for low density residential despite the zoning ordinance provision that the Lot was general business. He stated that the comprehensive plan took precedence over the zoning ordinance. He admitted on cross examination, however, that there was no permissible use for ot 129" other than to extend a roadway over "Lot 129" to provide access to "Lot 20."
 The Appellants' Arguments
The Appellants argue that the Board's Decision denying their application for a dimensional variance on "Lot 20" and a use variance on "Lot 129" was not supported by the evidence of record. The issue of traffic safety, Appellants contend, is undisputed; the Town's expert agreed with their traffic estimates. The Board's finding that the use is an "unsafe" one, Appellants argue, is contrary to the legislative action by the Town Council which designated such use as "permitted" under the zoning ordinance. Dimunition of property, Appellants further contest, is not part of the relevant criteria set forth in the zoning ordinance. As to the comprehensive plan, the Appellants state the only detailed testimony given in that regard was from Mr. Ruggiero, who opined that the application was in conformance with the comprehensive plan. Additionally, the Appellants continue, from 1988 to present, the Town ignored the issue that its zoning ordinance and comprehensive plan were not in conformance despite the statutory requirement that it had 18 months from the adoption of the comprehensive plan to conform the two. Accordingly, the Appellants argue, the Town should be precluded from arguing at this late date that the general business use of "Lot 20" is not in conformance with the comprehensive plan. Most importantly, the Appellants argue, they have met their burden with regard to the legal standards for use and dimensional variances. The Viti doctrine, they argue, requires that they show an adverse impact amounting to more than a mere inconvenience before their dimensional variance may be granted. According to the Appellants, this standard has been met because "Lot 20" has no access of any nature. Likewise, they assert that the use variance standard has been met with regard to "Lot 129." A use variance, under the ordinance, requires that the subject land or structure cannot yield any beneficial use if it is required to conform to the land use provisions of the zoning ordinance. Here, Appellants argue this standard has been met because "Lot 129," according to the testimony adduced at the hearings, fails to meet the dimensional requirements for any use in a village residential zoned district. Lastly, Appellants contend that the Board erred when it failed to merge "Lots 20 and 129," which according to the Appellants, were both nonconforming and substandard. In light of the foregoing, Appellants argue, the Board's decision should be reversed.
 The Appellees' Arguments
The Town argues in its Memorandum that it acted pursuant to procedure in denying Appellants' application. "Lot 20" is in the Groundwater Overlay District. According to §§ 186(g) and 284(b)(2) of the zoning ordinance, no improvements may be located thereon until the Planning Commission has approved a development plan. Pursuant to §45-24-57(A)(6) and § 21-13(b) of the zoning ordinance, the Zoning Board requested a recommendation from the Planning Commission with respect to the application. The Planning Commission reviewed the application and gave a negative recommendation based upon the facts that the self storage use was inconsistent with the Town's comprehensive plan and that it would be incompatible with the residential use of the surrounding area. Based upon this negative recommendation, the Board unanimously denied the Appellants' application in accordance with §45-24-41(c) of the R.I.G.L. and § 21-14(a) of the zoning ordinance, which support a denial of a proposed variance where the requested relief alters the surrounding area or impairs the intent or purpose of the zoning ordinance or comprehensive plan upon which the ordinance is based.
The Town argues that the area in which both of these lots are located has been in the Town's Groundwater Overlay District since 1974. The land use plan map contained in the comprehensive plan designates the location of "Lots 20 and 129" for low density residential development. On October 24, 1988, the Town's zoning ordinance was amended to limit the density of residential development in the Overlay District to one dwelling unit per two acres; hence, the "low density" classification of the comprehensive plan's land use map.
The Town explains in its Memorandum that in 1997, the North Kingstown Planning Commission and Planning Department were engaged in preparing a comprehensive amendment to the Town's zoning ordinance so as to conform the zoning ordinance with the Town's Comprehensive Plan, as required by § 45-22.2-5(A)(4) of the R.I.G.L. In late spring of 1997, the draft of the proposed amendment would have rezoned both of the Appellants' lots to "rural residential." Until November of 1997, the Appellants had not made any development proposals from 1985. This was shortly before the Town Council began public hearings on the proposed zoning amendment. The Appellants met with the Planning Commission to discuss the erection of a 120 unit hotel/motel on "Lot 20." At a November 1997 pre-application conference, the Commission expressed concern over the motel being accessed through a residential area. The Appellants agreed to consider residential uses for "Lot 20." The Town claims that as a consequence of the ongoing dialogue between the Appellants and the Town with respect to the ultimate use of "Lots 20 and 129," both lots were withdrawn from the comprehensive zoning amendment which was ultimately adopted on May 11, 1998. Due to the density limitations of the lots by the 1988 amendment, the Appellants were not satisfied. The Town suggested (and the Appellants rejected) the possibility of the transfer of development rights which would have doubled the number of residential units.
Contrary to the Appellants' assertion, the Town argues that the lots in question should not have been merged. The Town claims that § 21-311(a) is inapplicable because although "Lot 20" was nonconforming, "Lot 129" was not, as "Lot 129" lacked full compliance with the dimensional requirements of the ordinance when it was created. However, even if a merger took place, the Town argues, the resulting lot would be split zoned and the Appellants would still need to request a use variance for the portion that had been "Lot 129."
A Memorandum of Law was also submitted by Intervenor/Defendant, Mountain Laurel Estates Homeowners' Association ("Association"). In its Memorandum, the Association contends that valid legal grounds existed for the Board's denial of Appellants' application. The Association argues substantial evidence was presented at the hearing in support of the Board's determination that the proposed variances would alter the character of the surrounding area or impair the intent of the zoning ordinance or comprehensive plan. According to the Association, the record shows the proposed variances would present a dangerous traffic situation within the surrounding area due to a lack of directional signs, an increased traffic flow, and a change in the type of traffic (from solely residential traffic to combined residential and commercial traffic.) The Association argues, self storage facilities are inherently dangerous because, as indicated by the record, unknown and potentially dangerous and/or flammable items may be stored there. Additionally, Mr. McGovern testified that irreparable harm in the form of immeasurable dimunition of property value would also result if the variances were granted. The Association argues that the traffic study conducted by Appellants' expert, Mr. Perry, was deficient for its failure to address the current usage of the streets and the detrimental impact of the addition of commercial traffic to those residential streets. The Association also argues the Appellants failed to raise the issue of merging the two lots at the hearings before the Zoning Board of Review, thus waiving it. However, it argues, assuming merger was an issue, it would be consistent with the comprehensive plan to designate the larger lot for residential rather than general business purposes. Lastly, the Association attacks the Appellants' assertion that a denial results in a unconsitutional taking of their property. The Association counters that the Appellants have already been compensated for whatever damage was incurred by "Lot 20" as a result of the construction of Route 4.
 The Board's Decision
"[A] municipal board, when acting in a quasi-judicial capacity, must set forth in its decision findings of fact and reasons for the action taken." Irish Partnership v. Rommel, 518 A.2d 356, 358 (R.I. 1986). "Findings made by a zoning board must, of course, be factual rather than conclusional, and the application of the legal principles must be something more than the recital of a litany." Id. at 358-59. "[Z]oning-board decisions on variance applications (whether use or dimensional) [must] address the evidence in the record before the board that either meets or fails to satisfy each of the legal preconditions for granting such relief, as set forth in § 45-24-41(c) and (d)." Von Bernuth v. Zoning Board of Review of the Town of New Shoreham,770 A.2d 396 (R.I. 2001). In the current action, the Board found that if the dimensional variance was granted, it would result in the following: a dangerous traffic situation within the surrounding area due to the lack of directional signs and increased traffic flow; the creation of an unsafe situation for the residents and children of the surrounding area due to increased traffic and a change in the type of traffic from residential to a combination of residential and commercial traffic; the creation of an unsafe situation for the residents of the surrounding area due to the nature of proposed use; and a dimunition of property values for the property owners of the surrounding area. Additionally, the Board found that the granting of the dimensional variance would impair the express objective of § D.1.2 of the Ordinance entitled, Land Use Vision Goals and Objectives, and would impair Objective 1.0.6, to protect residential neighborhoods from the impacts of incompatible nonresidential uses. It also found the use lacked conformance with § D.1.5 of the Land Use Plan which designates the subject parcel for low density residential development. Likewise, the Board denied the proposed use variance for "Lot 129" on the grounds that the proposed use variance would alter the character of the surrounding area or impair the intent of the zoning ordinance or comprehensive plan, and that the Appellants failed to show that there would be no other beneficial use to "Lot 129" if the variance was denied.
 Standard of Review "(D) The court shall not substitute its judgment for that of the zoning board of review as to the weight of the evidence on questions of fact. The court may affirm the decision of the zoning board of review or remand the case for further proceedings, or may reverse or modify the decision if substantial rights of the appellant have been prejudiced because of findings, inferences, conclusions or decisions which are:
 (1) In violation of constitutional, statutory or ordinance provisions; (2) In excess of the authority granted to the zoning board of review by statute or ordinance; (3) Made upon unlawful procedure; (4) Affected by other error of law; (5) Clearly erroneous in view of the reliable, probative, and substantial evidence of the whole record; or (6) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion."
In reviewing the action of a zoning board of review, the Court "must examine the entire record to determine whether `substantial' evidence exists to support the board's findings." Toohey v. Kilday,415 A.2d 732, 735 (R.I. 1980) (citing DeStefano v. Zoning Bd. of Review of Warwick, 122 R.I. 241, 245, 405 A.2d 1167, 1170 (1979); Apostolou v. Genovesi, 120 R.I. 501, 504, 388 A.2d 821, 824-25(1978)). "Substantial evidence as used in this context means such relevant evidence that a reasonable mind might accept as adequate to support a conclusion and means an amount more that a scintilla but less than a preponderance." Apostolou at 825. Moreover, this Court should exercise restraint in substituting its judgment for the zoning board of review and is compelled to uphold the board's decision if the Court "conscientiously finds" that the decision is supported by substantial evidence contained in the record. Mendonsa v. Corey, 495 A.2d 257 (R.I. 1985) (citations omitted).
 G.L. § 45-24-41(c)
Section 45-24-41(c) of the General Laws of Rhode Island provides:
 "(c) In granting a variance, the zoning board of review requires that evidence to the satisfaction of the following standards is entered into the record of the proceedings:
 (1) That the hardship from which the applicant seeks relief is due to the unique characteristics of the subject land or structure and not to the general characteristics of the surrounding area; and is not due to a physical or economic disability of the applicant, . . .;
 (2) That the hardship is not the result of any prior action of the applicant and does not result primarily from the desire of the applicant to realize greater financial gain;
 (3) That the granting of the requested variance will not alter the general character of the surrounding area or impair the intent or purpose of the zoning ordinance or the comprehensive plan upon which the ordinance is based; and
 (4) That the relief to be granted is the least relief necessary. (Emphasis added.)
As this Court may not substitute its judgment for that of the Board's, it will confine its search of the record for substantial evidence in support of the Board's findings that the granting of the variances would alter the general character of the surrounding area or impair the intent or purpose of the zoning ordinance or the comprehensive plan upon which the ordinance is based. Additionally, with regard to "Lot 129," this Court will search the record for substantial evidence in support of the Board's finding that the Appellants failed to show that there would be no other beneficial use to "Lot 129" if the use variance was denied.
 Lot 20
The Board's decision denying the Appellants a dimensional variance for "Lot 20" is supported by the substantial evidence of record and does not constitute an abuse of discretion. Pursuant to § 45-24-41(d), an applicant seeking a dimensional variance must demonstrate to the zoning board that the hardship he would suffer if denied said relief would amount to "more than a mere inconvenience, which means that there is no other reasonable alternative to enjoy a legally permitted beneficial use of one's property." See also, Sciacca v. Caruso, 754 A.2d 102 (R.I. 2000) Additionally, the broad language of § 45-24-41(c)(3), upon which the dimensional variance was denied, confers discretion upon the Board to determine on a case by case basis whether the granting of a variance would be proper given the character of the surrounding area and the nature of the property as well as the provisions of the ordinance and comprehensive plan. Not all "permitted" uses under a zoning district are compatible within a surrounding area. If they were, the criterion of § 45-24-41(c)(3) would apply only to use variances. Here, §45-24-41(c), applies merely to "variances" with no distinction made between dimensional and use variances. A plain reading of this language indicates that the legislature, in not specifying one or the other, intended this section to apply to both types of variances. In so doing, the legislature foresaw that, on occasion, permitted uses, not just prohibited uses, could alter the character of the surrounding area or impair the intent of the zoning ordinance or comprehensive plan.
In the present action, testimony was heard at the hearings that it is preferable in town planning to access a commercial business through commercial and not residential streets for safety reasons. Additionally, the Board heard testimony that truck trips to the proposed self storage facility would account for 2-15% of the weekday traffic to the site. This traffic would travel through the relatively enclosed MLE community. The Board, therefore, did not abuse its discretion in finding that a proposed dimensional variance for a "permitted" use was incompatible with the surrounding area. Likewise, testimony was adduced at the hearings indicating that the land use map of the comprehensive plan designates the lots as residential and not business. Therefore, there was no error or abuse of discretion in the Board's finding that if the variance were granted on "Lot 20," the intent of the zoning ordinance and/or comprehensive plan would be impaired. While the zoning ordinance indicates that "Lot 20" is zoned "general business," the land use plan map describes the lot as "low density residential." The statute provides that where a proposed variance impairs the intent of the zoning ordinance or the comprehensive plan upon which it is based, the variance may be denied. Therefore, even if the proposed variance did not alter the community or impair the intent of the zoning ordinance on its face, the statute still allows for denial of the proposed variance if the overall intent of the comprehensive plan is impaired. Again, this is broad language indicating a wide latitude given the Board in determining the proposed variance's impact on a given area. The evidence in the record reveals that the intent of the comprehensive plan is for the area in question to be used in a "low density residential" capacity. Based on the foregoing, the Board's denial of the Appellants' application for a dimensional variance on "Lot 20" is substantially supported by the record and affirmed by this Court.
 Lot 129
This Court reverses, however, the part of the Board's decision that denied the Appellants' proposed use variance for "Lot 129." The Appellants sought a use variance for "Lot 129," zoned "village residential," in order that it may be used as access to "Lot 20," zoned "general business." Again the Board stated in denying the dimensional variance that the proposed use variance would alter the character of the surrounding area or impair the intent of the zoning ordinance or comprehensive plan. In addition, the Board found that the Appellants failed to show that there would be no other beneficial use to "Lot 129" if the variance was denied.
This Court first rejects, as lacking substantial evidence of the record, the Board's finding that the proposed use variance would alter the character of the surrounding area or impair the intent of the zoning ordinance or comprehensive plan. First, the intent of the Town is amply demonstrated by the record; the only purpose for which "Lot 129" was designed was as access to "Lot 20." This is evidenced both by the express plat notation that "Lot 129" be used for roadway purposes only, as well as the December 6, 1998 minutes of the hearing by the North Kingstown Plan Commission with regard to MLE. Contained therein is the statement: "Highbush Terrace has been extended to Mr. Lischio's property to provide access so that it would not become landlocked by the construction and land-taking of Route 4 which is currently being built and abuts this site." At that time, "Lot 20" had already been zoned "general business."
Additionally, use of the lot as a roadway does not alter the character of the community. Clearly, a roadway, in and of itself, is not detrimental to the community. The record reflects that the detriment to the community arises out of the use of "Lot 20," not "Lot 129." While the Town has expressed the opinion that the only compatible use for "Lot 20" is "low density residential," the possibility also exists that the Appellants may find an adequate "general business" use for the property that does not alter the character of the surrounding area or impair the intent of the zoning ordinance or comprehensive plan. Either way, this Court finds, after a careful review of the record, that the Board's denial of the use variance for "Lot 129" (on the grounds it would alter the character of the surrounding area or impair the intent of the zoning ordinance or comprehensive plan,) was based upon insufficient evidence and is therefore arbitrary, capricious, and clearly erroneous.
This Court must next consider whether the Board's denial of the use variance for "Lot 129" was warranted under the corollary requirements of G.L. § 45-24-41(c)(1),(2), and (4) as well as § 45-24-41(d). Section 45-24-41(c)(1) and (2) provide:
 "(1) That the hardship from which the applicant seeks relief is due to the unique characteristics of the subject land or structure and not to the general characteristics of the surrounding area; and is not due to a physical or economic disability of the applicant, . . . ; (2) That the hardship is not the result of any prior action of the applicant and does not result primarily from the desire of the applicant to realize greater financial gain; . . . ."
The record establishes that the size of "Lot 129" is insufficient for any "low density residential" use. This fact is uncontroverted by the parties. The hardship inherent in "Lot 129" exists regardless of the area in which the small lot is situated. The dimensional defect is also not attributable to any disability or prior acts of the applicants or from their desire to realize financial gain, but due merely to its size and the express plat notation that it be used for roadway purposes only. Additionally, § 45-24-41 requires that "(4) . . . the relief to be granted is the least relief necessary." Here, the Appellants have not met their burden of demonstrating that the proposed variance is the only available remedy for a lot of that size.
Lastly, § 45-24-41(d) provides:
 "The zoning board of review shall, in addition to the above standards, require that evidence is entered into the record of the proceedings showing that: (1) in granting a use variance the subject land or structure cannot yield any beneficial use if it is required to conform to the provisions of the zoning ordinance. Nonconforming use of neighboring land or structures in the same district and permitted use of lands or structures in an adjacent district shall not be considered in granting a use variance . . . ."
This Court holds the Board's finding that the Appellants failed to show that there would be no other beneficial use to the property, which, unlike its other findings, was left unexplained, is conclusory and unsupported by the record. A search of the record reveals that the testimony of all parties is to the contrary. The evidence of record is uncontroverted that the only use for "Lot 129" is as access to "Lot 20." Both parties testified that there existed no other use for "Lot 129" other than as access to "Lot 20." Therefore, this Court reverses the Zoning Board's denial of the Appellants' application for a use variance on "Lot 129," as clearly erroneous in view of the reliable, probative, and substantial evidence of the whole record.
 Merger of the Lots
Section 45-24-38 provides that "[p]rovisions may be made for the merger of contiguous unimproved, or improved and unimproved, substandard lots of record in the same ownership to create dimensionally conforming lots or to reduce the extent of dimensional nonconformance." Section 27-311(c) of the North Kingstown Zoning Ordinance states: "that if two or more abutting nonconforming lots are held in the same ownership as of May 8, 1995 or subsequent thereto, such lots shall be combined for the purposes of this ordinance in order to conform or more nearly conform to the minimum area or any other dimensional requirements of this ordinance for the district in which the lots are located and such lots shall not be sold separately." Here, the Appellants argue that a merger of "Lots 20 and 129" is warranted as "Lot 20" had no frontage on any street (but had sufficient area to meet all other requirements,) while "Lot 129" had frontage but it could not meet any district dimensional requirements on its own. The Town claims that § 21-311(a) is inapplicable because although "Lot 20" was nonconforming, "Lot 129" was not, as "Lot 129" lacked full compliance with the dimensional requirements of the ordinance when it was created. And even if a merger took place, the Town argues, the resulting lot would be split zoned and the Appellants would still need to request a use variance for the portion that had been "Lot 129." The Association argues the Appellants failed to raise the issue of merging the two lots in the hearings before the Zoning Board of Review, thus waiving it. Assuming merger was an issue, it argues that it would be consistent with the comprehensive plan to designate the larger lot for residential rather than general business purposes.
Section 21-311(a) defines a "nonconforming lot." It states in pertinent part:
 "[A] nonconforming lot is a lot which does not meet one (1) or more of the minimum dimensional requirements for size, frontage or depth required by this chapter and which is a lot of record the dimensions of which have not been altered since its creation by a voluntary conveyance which rendered such lot more nonconforming and which was: (1) created by a deed or plat recorded on or after July 18, 1947, and was in full compliance with the minimum dimensional requirements for size, frontage and depth of the zoning ordinance in effect at the time of such recording, or 2) created by a deed or plat recorded prior to July 28, 1947." (Emphasis added.)
The Town is correct in its opposition papers that "Lot 129" is not a non-conforming lot as that term is defined in the North Kingstown zoning ordinance; "Lot 129" lacked full compliance with the dimensional requirements of the ordinance when it was created. The Board committed no error in failing to merge the two lots prior to its consideration of the proposed variances.
 Conclusion
After reviewing the entire record, this Court finds that the decision by the North Kingstown Board of Review with regard to Appellants' application for a dimensional variance on "Lot 20" is supported by the substantial evidence of record and does not constitute an abuse of the Board's discretion. The Board's denial of the proposed variance for "Lot 20" is affirmed. The Board's denial of the Appellants' application for a use variance for "Lot 129," however, is not supported by the substantial evidence of record and is clearly erroneous. Accordingly, the portion of the decision denying the variance for "Lot 129" is reversed.
Counsel shall submit the appropriate order for entry after notice.